b

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

EMERALD LAND CORP.                    CIVIL ACTION 6:17-CV-01655

VERSUS                                JUDGE JEANSONNE

CHEVRON U.S.A. HOLDINGS,              MAGISTRATE JUDGE PEREZ-MONTES
INC., *et al.*

---

## REPORT AND RECOMMENDATION

Before the Court are three motions entitled "Motion to Dismiss and Motion for More Definite Statement" filed by Defendants Chevron USA, Inc. ("Chevron") (Doc. 50); Trimont Energy (BL) L.L.C. and Whitney Oil & Gas, L.L.C. (Doc. 52); and EnerVest Energy L.P. and EnerVest Operating, L.L.C.  (Doc. 56).  Because Emerald failed to state claims–(1) for continuing torts due to land loss/subsidence caused by canals or for leaking waste pits; (2) in strict liability; (3) for backfilling canals; or (4) for civil fruits–Defendants' Motions to Dismiss (Docs. 50, 52, 56) should be GRANTED as to those claims only and DENIED as to all other claims.  Defendants' Motions for a More Definite Statement (Docs. 50, 52, 56) should be GRANTED.

## I.  Background

Plaintiff Emerald Land Corp. ("Emerald") filed a petition for a declaratory judgment and injunctive relief in the Louisiana 16th Judicial District Court in St. Mary Parish, against Defendants Trimont Energy (BL), L.L.C. ("Trimont") and

Whitney Oil & Gas, L.L.C. ("Whitney") (Doc. 1).[1] Trimont and Whitney answered the complaint. (Doc 1-2, p. 64/330).[2]

In a second amending petition filed on October 30, 2017. (Doc. 1-3, p. 260/331), Emerald added defendants Chevron U.S.A., Inc. ("Chevron") and Chevron U.S.A. Holdings Inc.; EnerVest Energy, L.P. and EnerVest Operating, L.L.C. (collectively "EnerVest"); and Texas Energy & Environmental, Inc. ("Texas Energy"). (Doc. 1).

Emerald contends that some of its property in St. Mary Parish lies within the Bateman Lake Oil and Gas Field ("Bateman Field"), and was subject to three oil, gas, and mineral leases between the previous owner, Wax Bayou Company, as lessor, and The Texas Company as lessee. (Doc. 60). Emerald alleges three mineral leases recorded in St. Mary Parish are involved in this action: (1) a 1934 mineral lease (C.O.B. 5-C, Entry No. 58779); a 1940 mineral lease (C.O.B. No. 5-X, Entry No. 66288); and (3) a 1950 mineral lease (C.O.B. 7-Q, Entry No. 81992) (collectively, "the mineral leases"). (Doc. 60). Emerald contends the ultimate successors to The Texas Company,[3] as the lessees under the three mineral leases, are: (1) Chevron (deep rights from May 1, 2002 to August 2, 2012); (2) EnerVest (shallow rights from January 1, 2000 to July 1, 2005); (3) Trimont (from July 10, 2015 to the present); and

---

[1] Emerald owns about 8,500 acres in St. Mary Parish, Louisiana. (Doc. 1-3). Part of Emerald's land is subject to oil, gas, and mineral leases, some of which are currently held by Emerald, EnerVest, and Trimont.

[2] Emerald filed the original complaint on January 3, 2017 (Doc. 1-2, p. 5/330), a first amended petition on February 13, 2017 (Doc. 1-2, p. 296/330), and a second amended petition on October 30, 2017. (Doc. 103).

[3] All conveyances are not listed herein but are set forth in the amended complaints and their attachments.

(4) Texas Energy (its subsidiary Louisiana Energy & Environmental, Inc. acquired mineral rights on January 1, 2000). (Docs. 1-3, 60). Whitney is Trimont's contract operator for wells in the Bateman Field that are within the scope of the mineral leases. (Docs. 1-3, 60).

Emerald contends production and revenue from the Bateman Field attributable to the mineral leases have declined since 2010 and no longer produce in paying quantities. (Doc. 1-3). Emerald further contends the mineral leases automatically terminate once they no longer produce in paying quantities as defined by Louisiana law. Emerald alleges Trimont and Whitney continue to operate the wells, despite lack of production, in order to avoid triggering their plugging and abandonment obligations. (Docs. 1-3, 60). Emerald further alleges that its Produced Water Disposal Agreement with Trimont and Whitney expired on August 15, 2015, but they are continuing to use and operate the water disposal wells despite a demand to cease and desist on November 23, 2016. (Doc. 1-3). Emerald alleges it was paid royalties of less than ten cents per acre for the last 18 months of 2016 and 2017. (Doc. 1-3).

Additionally, Emerald contends Defendants have abandoned unused equipment and debris, oilfield sites, shut-in wells and idle flowlines, and unused canals on its property that have contaminated the surface and the ground water. (Docs. 1-3, 60). Emerald further contends Defendants disposed of produced water in salt water disposal wells on Emerald's property without having the right or permission to do so. (Docs. 1-3, 60).

3

Emerald seeks: (1) a declaratory judgment against Trimont and Whitney that the mineral leases automatically terminated for failure to produce in paying quantities (La. R.S. 31:124) and that they failed to furnish a recordable instrument evidencing termination of the mineral leases (La. R.S. 31:206); (2) damages for trespass in bad faith against Trimont and Whitney because, since August 15, 2016, Trimont/Whitney have entered Emerald's property access and used the disposal wells on Emerald's property for produced salt water; (3) alternatively, damages for unjust enrichment against Trimont and Whitney due to unauthorized access and use of Emerald's disposal wells; (4) damages from all Defendants for: property restoration and remediation due to Defendants' contamination and pollution of Emerald's property (La. C.C. arts. 667, 2315, 2317, 2322, La. R.S. 30:29, State and Local Coastal Resources Management Act of 1978 and coastal zone regulations) (alleging abandoned equipment, batteries, and debris, shut-in wells, failure to backfill miles of canals that are no longer used); and (5) damages for breach of contract.  (Docs. 1-3, 60).

Chevron removed the case on diversity with consent from the other Defendants (Doc. 1).  After Emerald's Motion for Remand was denied (Doc. 41), the parties jointly and voluntarily dismissed Chevron USA Holdings, Inc.  (Doc. 55).  Texas Energy was dismissed for failure to effect service.  (Doc. 64).

The remaining Defendants then filed their Motions to Dismiss for failure to state a claim and Motions for a More Definite Statement.  (Docs. 50, 52, 56).  Emerald responded to those motions (Doc. 60), and Defendants replied.  (Docs. 62, 63, 65).

4

## II.   Law and Analysis

### A.   Standards for Motion to Dismiss

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6).  "[A] complaint will survive dismissal for failure to state a claim if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Legate v. Livingston, 822 F.3d 207, 210 (5th Cir. 2016) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  The court must view all well-pleaded facts in the light most favorable to the plaintiff.  See Yumilicious Franchise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016).  Courts must presume that general allegations embrace the specific facts that are necessary to support the claim.  See National Organization for Women, Inc. v. Scheidler, 510 U.S. 249 (1994) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)).

### B.   Emerald states a claim for breach of the obligation to repair and restore its property pursuant to La. R.S. 31:124.

Defendants contend Emerald's claim for restoration pursuant to La. C.C. art. 2683(3)[4] should be dismissed because it is not ripe and because Emerald did not

---

[4] Under Louisiana law, mineral leases must be construed as leases and the codal provisions applicable to ordinary leases must be applied.  See Del-Ray Oil & Gas v. Henderson Petroleum Corp., 797 F.2d 1313, 1316 (5th Cir. 1986); Ballard v. XTO Energy, Inc., 784 F. Supp. 2d 635, 639 (W.D. La. 2011); Coyle v. North America Oil Consolidated, 201 La. 99, 114, 9 So.2d 473, 478 (1942); Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336 (1940).

La. C.C. art. 2683(3) states:

identify a contractual provision that obligates Chevron to restore the property.  (Doc. 50).  Defendants contend the leases have not expired, so a demand to repair or restore is premature.

First, Emerald seeks a declaratory judgment against Trimont and Whitney that the mineral leases automatically terminated for failure to produce in paying quantities (La. R.S. 31:124) and they failed to furnish a recordable instrument evidencing termination of the mineral leases pursuant to La. R.S. 31:206.

Emerald specifically alleges the leases in the Bateman Field expired due to non-production in paying quantities, pursuant to La. R.S. 31:124.[5]   Emerald specifically contends Defendants Trimont and Whitney operated at a loss for speculation purposes only and paid royalties to Emerald of less than ten cents per acre for the eighteen months prior to filing the petition.  La. R.S. 31:206 provides that "when a mineral right is extinguished by the accrual of liberative prescription, expiration of its term, or otherwise, the former owner shall, within thirty days after written demand by the person in whose favor the right has been extinguished or terminated, furnish him with a recordable act evidencing the extinction or expiration

---

The lessee is bound:
 (3) To return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear or as otherwise provided hereafter.

[5] La. R.S. 31:124 states, in pertinent part:
When a mineral lease is being maintained by production of oil or gas, the production must be in paying quantities. It is considered to be in paying quantities when production allocable to the total original right of the lessee to share in production under the lease is sufficient to induce a reasonably prudent operator to continue production in an effort to secure a return on his investment or to minimize any loss.

of the right." See Weyerhaeuser Co. v. Pardee Minerals, LLC, 2018 WL 5624312, *2 (W.D. La. 2018) (Report and Recommendation), adopted, 2018 WL 5622288 (W.D. La. 2018).

A mineral lease terminates upon the occurrence of an express resolutory condition. See La. R.S. 31:133. When a mineral lease is being maintained by production of oil or gas (the secondary term), the production must be in paying quantities. See La. R.S. 31:124; see also Landry v. Flaitz, 245 La. 223, 157 So.2d 892, (1963). Even though production continues beyond the primary term[6], the term of the lease may expire and the contract may be automatically dissolved if production is not in paying quantities. B.A. Kelly Land Co., L.L.C. v. Questar Exploration & Production Co., 47,509 (La. App. 2 Cir. 11/14/12), 106 So.3d 181, 191, writ denied, 2013-0331 (La. 4/19/13), 112 So.3d 223 (citing Noel Estate Inc. v. Murray, 223 La. 387, 65 So.2d 886 (1953)). Leases that are extended by production beyond the primary term are automatically cancelled for the lessee's failure to produce in paying quantities. See B.A. Kelly Land Co., L.L.C., 106 So.3d at 191 (citing Landry, 157

---

[6] The "primary term" refers to that period stipulated by the parties during which the lease may be kept alive by means other than the actual production of oil or gas. See Landry v. Flaitz, 245 La. 223, 157 So.2d 892, 895 (1963). Even though production continues beyond the primary term, the term of the lease may expire and the contract be automatically dissolved if production is not "in paying quantities." See Landry, 157 So.2d at 895. Implicit in the term "paying quantities" is the requirement that the lessee show a profit. See Dore Energy Corp. v. Prospective Investment & Trading Company, Ltd., 2010 WL 4068802, *6 (W.D. La. 2010) (citing Menoah Petroleum, Inc. v. McKinney, 545 So.2d 1216, 1220 (La. App. 2d Cir. 1989)); see also Vance v. Hurley, 215 La. 805, 41 So.2d 724 (1949).

So.2d at 895); <u>Pace Lake Gas Co. v. United Carbon Co.</u>, 177 La. 529, 148 So. 699 (1933); <u>Smith v. Sun Oil Co.</u>, 172 La. 655, 135 So. 15 (1931)).

Emerald alleges the leases have terminated for failure to produce in paying quantities.  That allegation necessarily implies the leases are in secondary terms. Accepting Emerald's allegations as true for purposes of this motion and assuming the general allegations embrace the specific fact necessary to support Emerald's claims, Emerald has pleaded sufficient facts to allege termination of the leases by operation of law.

Moreover, as discussed below, the duty to remediate oilfield contamination exists under the prudent operator standard of the Mineral Code and under the Louisiana Civil Code *prior* to termination of the lease.  <u>See</u> <u>Marin v. Exxon Mobil Corp.</u>, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 256.  In <u>Marin</u>, the Louisiana Supreme Court held that, where the plaintiff-lessor claimed soil and groundwater contamination caused by oil and gas operations, the lessor need not wait until the end of the lease to sue the lessee for damage to his property.

Since, Emerald's claims for restoration and remediation pursuant to La. C.C. art. 2683(3) are not premature, the Motions to Dismiss (Doc. 52) should be denied.

C.     <u>**Emerald states claims for remediation and restoration of its property.**</u>

Emerald contends it is entitled to restoration and remediation of its property (including ground water contamination, surface contamination from abandoned equipment and debris, land loss and subsidence, and backfilling canals) from all

Defendants.   Emerald contends its restoration claims are, in part, based upon operation of law, La. R.S. 31:124, and in part upon terms in the mineral leases.

Defendants contend Emerald is not entitled to have its land restored to its original, pre-lease condition.

Under Louisiana law, lessees have a duty to restore property to its original condition, minus normal wear and tear, at the conclusion of the lease, and to refrain from using the property unreasonably or excessively during the pendency of the lease. See Alford v. Chevron U.S.A. Inc., 13 F. Supp. 3d 581, 600 (E.D. La.2014).   Under C.C. art. 2683(3), a lessee is bound "[t]o return the thing at the end of the lease in a condition that is the same as it was when the thing was delivered to him, except for normal wear and tear." This obligation arises "only at the end of the lease."   See Marin, 48 So. 3d at 256.   In absence of unreasonableness or excessiveness, the lessee has the duty to restore the surface minus normal wear and tear.   See Marin, 48 So.3d at 260.

A lessor may not compel a lessee to restore the leased premises to their former condition when the lessor has expressly approved the modifications that the lessee accomplished.   See Terrebonne Parish School Board v. Castex Energy, Inc., 2004-0968 (La. 1/19/05, 16–17), 893 So. 2d 789, 800 (Where Plaintiff gave Defendants permission to dredge canals on the leased land, Plaintiff "consented to return of the leased land with the alterations that dredging entails."). In the absence of an express lease provision, La. R.S. 31:122 does not impose an implied duty to restore the surface to its original, pre-lease condition absent proof that the lessee has exercised its rights

under the lease unreasonably or excessively.  See Terrebonne Parish School Board, 893 So.2d at 800.  Where the lessee has operated unreasonably or excessively, as alleged in this case, the lessee has additional obligations, including the obligation to correct the damage due to the unreasonable or excessive operations.  See Marin, 48 So.3d at 260.

Emerald alleges damage (soil and water contamination) caused by unreasonable or excessive operations to which Emerald did not consent.  Emerald contends Defendants were not prudent operators when they failed to properly store, discharge, and dispose of toxic and hazardous oil field waste.  Emerald also contends Defendants have avoided their obligations as to equipment, debris, and well-plugging.  Emerald contends any damages awarded for restoration will be used for that purpose.  Emerald states claims for remediation and restoration.

The duty to remediate oilfield contamination exists under the prudent operator standard of the Mineral Code and under the Louisiana Civil Code.  See Marin, 48 So. 3d at 259-60.  That duty exists prior to termination of the lease under La. R.S. 31:22, La. C.C. arts. 2683, 2686, 2687, and 2792.[7]  See Marin, 48 So.3d at 256.  These

---

[7] La. Rev. Stat. Ann. § 31:122: "A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee."

Louisiana Civil Code art. 2686: "If the lessee uses the thing for a purpose other than that for which it was leased or in a manner that may cause damage to the thing, the lessor may obtain injunctive relief, dissolution of the lease, and any damages he may have sustained."

Louisiana Civil Code art. 2687: "The lessee is liable for damage to the thing caused by his fault or that of a person who, with his consent, is on the premises or uses the thing."

provisions continue throughout the term of the lease, and a lessor need not wait until the end of the lease to sue a lessee for damage to his property.  See <u>Marin</u>, 48 So.3d at 256.

As a general rule, when a person sustains property damage due to the fault of another, he is entitled to recover damages including the cost of restoration that has been or may be reasonably incurred, or, at his election, the difference between the value of the property before and after the harm.  See <u>State v. Louisiana Land & Exploration Co.</u>, 2012-0884 (La. 1/30/13), 12–13), 110 So.3d 1038, 1047–48.[8]  If, however, the cost of restoring the property to its original condition is disproportionate to the value of the property or economically wasteful–unless there is a reason personal to the owner for restoring the original condition, or there is a reason to believe the plaintiff will, in fact, make the repairs–damages are measured only by the difference between the value of the property before and after the harm.  See <u>Louisiana Land & Exploration Co.</u>, 110 So.3d 1038, 1047–48.  Restoration damages for property based on tort which exceed the value of the property are justifiable only when there are "reasons personal to the owner"[9] or there is reason to believe the landowner will, in fact, use the damages to restore the property.  See <u>Louisiana Land & Exploration</u>

---

Louisiana Civil Code art. 2692: "The lessee is bound to repair damage to the thing caused by his fault or that of persons who, with his consent, are on the premises or use the thing, and to repair any deterioration resulting from his or their use to the extent it exceeds the normal or agreed use of the thing."

[8] Defendants failed to cite this pivotal case, instead relying on older cases that deny restoration costs.

[9] Emerald contends it has "personal reasons" for wanting the property restored but does not state what they are.

Co., 110 So.3d 1038, 1047–48 (citing <u>Hornsby v. Bayou Jack Logging</u>, 902 So.2d 361, 368 (La. 5/6/05); <u>see also</u> <u>Union Pacific R.R. Co. v. Taylor Tr4uck Line, Inc.</u>, 2017 WL 3381339, *4 (W.D. La. 2017); <u>Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Co.</u>, 618 So.2d 874, 879-80 (La. 1993).

Defendants further argue Emerald is not entitled to restoration for land-loss, subsidence, and backfilling canals.  Emerald contends that Defendants created access canals on its property that are no longer necessary and are a continuing source of land-loss on the property.  Defendants contend Louisiana law does not require remediation of canals and related restoration for land-loss or subsidence.  A lessor may not compel a lessee to restore the leased premises to their former condition when the lessor has expressly approved the modifications that the lessee accomplished.  <u>See</u> <u>Terrebonne Parish School Board</u>, 893 So.2d at 800 (citing <u>Riggs v. Lawton</u>, 231 La. 2019, 93 So. 2d 543, 545 (1957).  In <u>Terrebonne Parish School Board</u>, the Louisiana Supreme Court held that, where the plaintiff gave the defendants permission to dredge canals on the leased land, the plaintiff consented to return of the leased land with the alterations that dredging entails.  <u>See</u> <u>Terrebonne Parish School Board</u>, 893 So. 2d at 800.  Therefore, Louisiana law does not require Defendants to backfill canals they had permission to dredge.  Emerald does not claim Defendants did not have permission to dredge canals and has not alleged they dredged canals in an unreasonable or excessive manner.  To the extent Emerald asks to have canals backfilled, that claim should be dismissed.

Accepting Emerald's allegations of unreasonable or excessive operations as true, Emerald stated claims for remediation and restoration, except to the extent is asks to have canals backfilled.  Therefore, Defendants' motion to dismiss Emerald's remediation and restoration claims, other than backfilling canals, should be denied.

**D.**   <u>**Emerald's continuing tort claims for leaking waste pits and land loss/subsidence caused by canals should be dismissed.  Emerald stated continuing tort claims for trespass and unplugged wells.**</u>

Defendants contend Emerald's continuing tort claims should be dismissed. Emerald alleges "continuing torts" of leaking buried oilfield waste, trespass, and unplugged wells.

To have a continuing tort, there must be continuous conduct that causes continuing damages. <u>See</u> <u>Global Marketing Solutions, L.L.C. v. Blue Mill Farms, Inc.</u>, 2013-2132 (La. App. 1 Cir. 9/19/14, 12), 153 So.3d 1209, 1216, writ den., 2014-2572 (La. 4/23/15), 173 So.3d 1164 (citing <u>Bustamento v. Tucker</u>, 607 So.2d 532, 543 (La. 1992)).  To determine whether a continuing tort exists, the court must look to the operating cause of the injury sued upon and determine whether it is a continuous one giving rise to successive damages, or whether it is discontinuous and terminates, even though the damage persists and may progressively worsen.  <u>See</u> <u>Global Marketing Solutions, L.L.C.</u> 153 So.3d at 1216 (citing <u>Marin</u>, 48 So.3d at 253).

Emerald contends the continued contamination of its land by leaking waste pits is a continuing tort.  In <u>Marin</u>, the Louisiana Supreme Court explained that when a defendant's damage-causing act is completed, the existence of continuing damages to the plaintiff, even progressively worsening damages, does not present successive

causes of action accruing because of a continuing tort.  See Marin, 48 So.3d at 28 (citing In re Medical Review Panel for Claim of Moses, 00-2643 (La. 5/25/01), 788 So.2d 1173, 1183.  Where the operating cause of plaintiff's injury is the actual disposal or storage of oilfield waste in unlined pits on plaintiffs' property, there is no continuing tort simply because the contaminants continue to dissolve into, or move with, the groundwater with the passage of time.  See Marin, 48 So. 3d at 28; see also, Hogg v. Chevron USA, Inc., 2009-2632 (La. 7/6/210), 45 So. 3d 991, 1003 (continuous leaking of underground gasoline storage tanks leak was not a continuing tort because the tort was the burial of the leaking tanks, not the continuous flow of gasoline).

Emerald's claim that Defendants buried oilfield waste in leaky, unlined pits alleges a violation of the prudent operator standard but does not state a claim for a continuing tort.  Therefore, although the continuing tort claim should be dismissed, Emerald's claim against Defendants for improper disposal of oilfield waste should not be dismissed.

Emerald also claims a "continuing trespass" by Trimont and Whitney.[10]  Under Louisiana law, a civil trespass is defined as the "unlawful invasion of the property or possession of another."  See Boudreaux v. Plaquemines Parish Gov't, 2009-0396 (La. App. 4th Cir. 2009), 22 So. 3d 1117, 1118.  A continuous trespass is a continuous tort; one where multiple acts of trespass have occurred and continue to occur; where the tortious conduct is ongoing, this gives rise to successive damages.  See Hogg, 45 So.3d at 1003 (citing Perrilloux v. Stilwell, 00–2743 (La. App. 1 Cir. 3/28/02), 814 So.2d 60

---

[10] Emerald did not allege a claim of trespass against Chevron and EnerVest.

(continuing trespass found where neighbor continued to use driveway that encroached on landowner's property, depriving landowner of peaceful enjoyment of property on a successive, day-to-day basis)).   Emerald has stated claims against Trimont and Whitney have committed multiple acts of trespass by continuing to conduct oil and gas operations on its property after the leases terminated, and by illicitly using Emerald's saltwater disposal wells.

Emerald also contends Defendants failed to properly plug numerous abandoned wells on its property and that the unplugged wells continue to contaminate the property.  A leaking unplugged well is a continuous tort.  See Global Marketing Solutions, L.L.C., 153 So. 3d at 1217.  Therefore, Emerald has stated a continuing tort claim for a leaking well.

Emerald contends that Defendants created access canals on its property that are no longer necessary and are a "continuing" source of land-loss and subsidence on the property.   As discussed above, Emerald does not have a right to have the canals backfilled.  Therefore, his continuing tort claim for land loss/subsidence cause by canals should be dismissed.

Because Emerald has failed to allege continuing tort claims as to leaking waste pits and land loss/subsidence from canals, Defendants' Motions to Dismiss those continuing tort claims (Docs. 50, 52, 54) should be granted.  Defendants' Motions to Dismiss Emerald's continuing tort claims for trespass and unplugged wells (Docs. 50, 52, 56)  should be denied.

E.   <u>Emerald's strict liability claims should be dismissed.</u>

Emerald alleges Defendants are strictly liable for the damages they have caused to its property pursuant to La. C.C. arts. 667, 2317, and 2322.[11]

Before the 1996 amendments to the Civil Code, article 667 provided as follows: "Although a proprietor may do with his estate what he please, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."  In 1996, the legislature "amended article 667 to require a showing of negligence in any claim for damages under article 667 other than those caused by 'pile driving' or 'blasting with explosives.' "  <u>Alford v.</u>

---

[11] La. C.C. art. 667: "Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of *res ipsa loquitur* in an appropriate case. Nonetheless, the proprietor is answerable for damages without regard to his knowledge or his exercise of reasonable care, if the damage is caused by an ultrahazardous activity. An ultrahazardous activity as used in this Article is strictly limited to pile driving or blasting with explosives."

La. C.C. art. 2317: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."

La. C.C. art. 2322: "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of *res ipsa loquitur* in an appropriate case."

Anadarko E&P Onshore L.L.C., 2015 WL 471596 at *8 (E.D. La. 2015) (citing Vekic v. Wood Energy Corp., 2004 WL 2367732 at *4 (E.D. La. 2004)).

Strict liability for any activities other than pile driving or blasting with explosives was eliminated under Louisiana law in 1996. None of the Defendants held a mineral on Emerald's property before 2000. Therefore, Emerald cannot allege a claim in strict liability pursuant to Article 667 against any Defendant.

La. C.C. arts. 2327 and 2322 were likewise amended in 1996 to impose a negligence standard. Thus, to prevail on a custodial liability claim under Article 2317 or Article 2322, a plaintiff must prove that defendant knew or should have known of the defect that caused the plaintiff's injuries. See Alford, 2015 WL 471596 at *8.

Therefore, Defendants' Motions to Dismiss Emerald's strict liability claims (Docs. 50, 52, 56) should be granted.

F.   **Emerald's claim for civil fruits should be dismissed, and his claim for unjust enrichment should not be dismissed.**

Finally, Defendants argue Emerald cannot recover costs for storage expenses. Defendants appear to be referring to Emerald's allegation of unauthorized disposal of salt water on its property, after expiration of the 2015 lease of its salt water disposal wells. Thus, the "storage expenses" Defendants refer to are apparently a lease of its salt water disposal well.

Emerald alleges Trimont and Whitney previously leased its salt water disposal wells. The last least was in 2015 and expired in 2016. Subsequent to that, Trimont and Whitney continued to use the salt water disposal wells without authorization. Thus, the "civil fruits" of the "storage" of the salt water would be a lease payment.

Since this claim is made only against Trimont and Whitney, Chevron's and EnerVest's Motions to Dismiss should be denied as moot as to this claim.

Emerald alleges it entered into a Produced Water Disposal Agreement with Trimont and Whitney on August 15, 2015, pursuant to which Defendants could use and operate the disposal wells for one year for a sum of $10,000 per month, with the option to extend the agreement for an additional one year upon payment of $144,000 or $15,000 per month. That agreement expired by its terms on August 14, 2016, and a new contract was not entered into. Despite that, according to Emerald, Trimont and Whitney continued to use its disposal wells.

To recover under the theory of unjust enrichment, a plaintiff must show: (1) enrichment on the part of defendant; (2) impoverishment on the part of the plaintiff; (3) a causal relationship between the enrichment and the impoverishment; (4) an absence of justification or cause for the enrichment or the impoverishment; and (5) the lack of another remedy at law. See IP Timberlands Operating Co., Ltd. v. Denmiss Corp., 93-1637 (La. App. 1 Cir. 5/23/95), 657 So.2d 282, 302, writs denied, 95-1958, 95-1593, 95-1691 (La. 10/27/95), 661 So.2d 1348 (citing Edwards v. Conforto, 636 So.2d 901, 907 (La. 1994)). In Corbello v. Iowa Production Co., the court awarded damages–apparently on the basis of unjust enrichment–calculated by the cost savings the defendant realized from disposing of saltwater on the plaintiffs' property in lieu of commercial disposal. See Corbello v. Iowa Production Co., 2002–0826 (La.2/25/03), 850 So.2d 686, 705, superceded by statute on other grounds, Louisiana Land & Exploration Co., 110 So.3d at 1048.

18

An alternative theory for recovery is "disgorgement of profit," or "civil fruits." Under Louisiana law, the remedy of "disgorgement of profit" is available upon the showing of bad faith possession.  See SGC Land, L.L.C. v. Louisiana Midstream Gas Servs., 939 F.Supp.2d 612, 619–20 (W.D. La. 2013) (citing Corbello, 850 So.2d 686; La. C.C. art. 486); see also Rosenthal–Brown Fur Co. v. Jones–Frere Fur Co., 162 La. 403, 411, 110 So. 630, 633 (1926) ("The question whether a possessor be in good faith or in bad faith (legal or actual) is the sole factor in determining whether such possessor should or should not account for the fruits of his possession.").  This doctrine stems from La. C.C. art. 486 which provides in part that a possessor in bad faith is bound to restore to the owner the fruits he has gathered or their value.  See  SGC Land, L.L.C., 939 F. Supp. 2d at 619–20 (Plaintiffs sought damages for trespass, including disgorgement of profits for transmitting third-party gas through the pipeline.) (citing Wagoner v. Chevron USA Inc., 45,507 (La. App. 2d Cir. 8/18/10), 55 So. 3d 12, 19, writ denied, 2010–2773 (La. 3/2/12), 83 So. 3d 1032).  However, in Wagoner the court held the "savings" or economic benefit realized by Defendants in storing/disposing of their production waste/byproducts on Plaintiff's property rather than storing/disposing of them offsite does not qualify as a "fruit" or a "civil fruit." See Wagoner, 55 So. 3d at 19.

Emerald contends Trimont and Whitney were unjustly enriched through its illicit, free use of Emerald's disposal wells, and that Emerald was impoverished by Trimont's and Whitney's failure to pay for that use. Since Emerald is not entitled to

"civil fruits," there is no other remedy available at law and unjust enrichment applies. Compare Corbello, 850 So. 2d at 705.

Since Emerald has not stated a claim for "civil fruits," Defendants' Motions to Dismiss that claim (Docs. 50, 52, 56) should be granted.  Because Emerald stated a claim against Trimont and Whitney for unjust enrichment, Defendants' Motions to Dismiss (Docs. 50, 52, 56) should be denied on that issue.

### G.   Defendants' Motion for a More Definite Statement should be granted.

Defendants also ask that Emerald be ordered to provide a more definite statement as to its claims.  Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so expressly vague, ambiguous [or unintelligible] that the [opposing] party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e).

Chevron asks for details as to how the property became contaminated, the extent the location of any contamination, and what specific facilities were operated by Chevron that allegedly caused the contamination.  Emerald's petition alleges the contamination claimed and, in an attachment, lists the wells and their operators.  The petition also alleges "abandoned equipment and oilfield debris" for the 135 wells operated by Defendants.  The attachments to the petitions include owners, operators, and identification of the wells.  Emerald provides information as to which wells are shut-in but not plugged.

However, Emerald has not: (1) specified the locations of the alleged unlined and leaking pits; (2) stated whether and when the primary term of the mineral leases

expired; (3) specified and provided the remediation and restoration provisions in the leases; or (4) made any specific allegations as to what Chevron and EnerVest did or failed to do that caused damage to Emerald's property.  Therefore, Defendants are entitled to a more definite statement from Emerald to address those items.

Defendants' Motion for a More Definite Statement (Docs. 50, 52, 56) should be granted.

## III.   Conclusion.

Because Emerald's claims for restoration pursuant to La. C.C. art. 2683(3) are not premature, IT IS RECOMMENDED that Defendants' Motions to Dismiss for prematurity (Docs. 50, 52, 56) be DENIED.

Because Emerald has stated claims for remediation and restoration, IT IS RECOMMENDED that Defendants' motions to dismiss Emerald's remediation and restoration claims (Docs, 50, 52, 56), other than backfilling canals, be DENIED.

IT IS ALSO RECOMMENDED that Defendants' Motions to Dismiss Emerald's claim to have canals backfilled (Docs. 50, 52, 56) be GRANTED and Emerald's claim for backfilling canals be DISMISSED WITH PREJUDICE.

Because Emerald has failed to allege continuing tort claims as to leaking waste pits and land loss/subsidence from canals, IT IS RECOMMENDED that Defendants' Motions to Dismiss those continuing tort claims (Docs. 50, 52, 56) be GRANTED.  IT IS RECOMMENDED that Defendants' Motions to Dismiss Emerald's continuing tort claims for trespass and unplugged wells be DENIED.

Because Emerald failed to state a claim for strict liability, IT IS RECOMMENDED that Defendants' Motions to Dismiss Emerald's strict liability claims (Docs. 50, 52, 56) be GRANTED.

Because Emerald has not stated a claim for "civil fruits," IT IS RECOMMENDED that Defendants' Motions to Dismiss the claim for civil fruits (Docs. 50, 52, 56) be GRANTED.

Because Emerald stated a claim against Trimont and Whitney for unjust enrichment, IT IS RECOMMENDED that Defendants' Motions to Dismiss (Docs. 50, 52, 56) the unjust enrichment claim be DENIED.

IT IS RECOMMENDED that Defendants' Motions for a More Definite Statement (Docs. 50, 52, 56) be GRANTED and that Emerald be ORDERED to: (1) specify the locations of the alleged unlined and leaking pits; (2) specify whether and when the primary term of the mineral leases expired; (3) specify and provide the remediation and restoration provisions in the leases; and (4) specify what Chevron and EnerVest did or failed to do that caused damage to Emerald's property.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy

of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _____1st_____ day of March, 2019.

Joseph H.L. Perez-Montes
United States Magistrate Judge