c

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| EMERALD LAND CORP., Plaintiff | CIVIL ACTION NO. 6:17-CV-01655 |
| VERSUS | JUDGE SUMMERHAYS |
| TRIMONT ENERGY (B L) L.L.C., ET AL., Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## MEMORANDUM ORDER

Before the Court is Chevron U.S.A. Inc.'s ("Chevron's") Motion for Contempt and Sanctions ("Motion for Sanctions") (ECF No. 249). Chevron claims that Plaintiff Emerald Land Corporation ("Emerald Land") has violated a Protective Order (ECF No. 81) governing inadvertent disclosures during discovery. Chevron seeks a contempt finding and sanctions, including attorney's fees and costs.

Emerald Land received inadvertently disclosed documents. Chevron provided the requisite notice. Emerald Land failed to comply with the procedure set forth in the Protective Order. Accordingly, the Motion for Sanctions is GRANTED IN PART to the extent that Chevron seeks costs and attorney's fees for Emerald Land's violation of the Protective Order. However, the record does not fully support a finding of "bad faith" on Emerald Land's part. So additional sanctions – including a contempt

finding – are unwarranted. The Motion (ECF No. 249) is thus DENIED IN PART in that, and in all other, respects.[1]

I. <u>Background</u>

Emerald Land filed a petition for declaratory judgment and injunctive relief in the Sixteenth Judicial District Court, St. Mary Parish, Louisiana, against Defendants Trimont Energy (BL), L.L.C. and Whitney Oil & Gas, L.L.C.. ECF No. 1. In a second amending petition, Emerald Land added Defendants Chevron, Chevron U.S.A. Holdings, Inc., EnerVest Energy, L.P., EnerVest Operating, L.L.C., and Texas Energy & Environmental, Inc. *Id.*[2] Chevron removed. *Id.*

On the parties' joint motion (ECF No. 80), the Court entered a Stipulated Protective Order (ECF No. 81) regarding confidential information sought in discovery. The purpose of the Order (ECF No. 81) is to "allow the Parties to freely exchange Confidential Documents and information with each other . . . and to avoid any waiver of any privilege throughout the inadvertent production of documents protected by the work product doctrine, the attorney-client privilege, the joint defense or common interest privilege, and any other applicable privilege." ECF No. 81 at 2. The Protective Order (ECF No. 81) includes a provision on the implementation of the return of inadvertently disclosed privileged documents. *Id.* at 9.

---

[1] The Court also DENIES Emerald Land's implicit request (ECF No. 262) to compel production of documents.

[2] Chevron U.S.A. Holdings, Inc. was voluntarily dismissed. ECF No. 55. And Texas Energy was dismissed for failure to effect service. ECF No. 64.

2

Chevron claims Emerald Land "deliberately def[ied] the Protective Order". ECF No. 249-1 at 5. Chevron seeks a contempt finding, attorney's fees, and costs. *Id.* Chevron also seeks an order from the Court (1) directing Emerald Land to return or destroy all copies of the disputed documents, and (2) prohibiting Emerald Land from using them in any manner in this or other litigation. *Id.* at 6.

Chevron submitted: (1) email communication with L. Grossman, P. Thibodeaux ("Thibodeaux"), and K. Miller ("Miller") first dated February 20, 2021 (ECF No. 3); (2) the declaration of Joseph Coleman ("Coleman"), Project Manager for Wild Well Control, Inc. ("Wild Well") (ECF No. 294-4); and (3) the declaration of Louis M. Grossman ("Grossman"), counsel of record for Chevron (ECF Nos. 249-5, 250).

Specifically, Chevron alleges their expert witness at Wild Well inadvertently disclosed draft expert reports, including draft tables and figures, in their subpoena response on January 27, 2021.[3] ECF No. 249-1 at 5. Chevron discovered the inadvertent production on February 20, 2021 while preparing its Exhibit List. *Id.* at 6. Pursuant to the Protective Order, Grossman notified Thibodeaux and Miller (counsel for Emerald Land) of the inadvertent disclosure, and requested return or destruction of the documents.[4] *Id.* at 5. Chevron contends Emerald Land refused to

---

[3] Chevron asserts the disclosure included nearly 150,000 pages included 25 drafts prepared exclusively by Wild Well before it published its November 20, 2020 expert report. ECF No. 249-1 at 6.

[4] Chevron asserts it demanded return of the following documents:

EMERALD LAND_WILD WELL_SDT_112860-112866; 128325; 128326; 128327; 128328; 128403; 129077; 129079; 129080; 129142; 129289; 129436; 129655; 129802; 130022; 130244; 130467; 130689; 130909; 131129; 131349; 131571; 131605; 131830; 132016; 132199; 132873; 133546; 134223; 134900; and 001_1.PNG – 007_7.PNG.

treat the materials as privileged, refused to sequester the materials, and still refuses to return and destroy them, as required under both the Protective Order (ECF No. 81) and Fed. R. Civ. P. 26(b)(5)(B). *Id.* Chevron further alleges that, despite complete awareness of the alleged privilege, Emerald Land reviewed the documents, informed the Court the claim of privilege discussion was premature, and included the documents in its Witness and Exhibit Lists (ECF No. 244). *Id.* And now, Emerald Land seeks to use the documents in deposing Chevron's expert witness. *Id.*

Emerald Land opposes, attaching: (1) email correspondence; (2) the Subpoena Duces Tecum to Wild Well; (3) report excerpts; (4) excerpts of their Rule 30(b)(6) corporate deposition of Stephen Conner ("Conner") for Chevron; (5) excerpts of their deposition of Kenneth B. Choate ("Choate"), Broussard Brothers, Inc.'s corporate representative; and (6) excerpts of their deposition of Richard Kennedy ("Kennedy"), Northstar Exploration Company's corporate representative. ECF Nos. 262, 263 at 1-72.

According to Emerald Land, the disputed documents fall into three categories, or "batches." Emerald Land contends the first batch ("WILD WELL_SDT_12838") was prepared by a third-party consultant and was not privileged. Chevron ultimately acquiesced. *Id.* The second batch ("WILD WELL_SDT_ 129077, 12079, and 134900) includes stand-alone notes and memoranda that Wild Well prepared as part of its

---

ECF No. 249-1 at 6. Emerald Land later agreed to destroy seven privileged documents: LAND_WILD WELL_SDT_112860-112866 and 128325-128327. ECF No. 249-1 at 7. However, Chevron asserts Emerald Land asserted it intended to use the remaining documents to "depose Joe Coleman regarding [them]." *Id.*

4

analysis, separate and apart from its report. *Id.* Rule 26 does not protect these materials in Emerald Land's view. *Id.* And the third batch includes "draft reports," which Emerald Land concedes are typically privileged. *Id.* However, Emerald Land argues the portions of the draft reports that identify facts, data, or assumptions on which the expert relied are not privileged. *Id.* at 4-5.

Once notified of the inadvertent disclosures, counsel for Emerald Land responded to Grossman by email. *Id.* at 5. Emerald Land wished to explain its position regarding the disputed documents. The exchange could fairly be called an attempt to "confer." However, Chevron immediately filed for contempt rather than meet and confer, according to Emerald Land. *Id.*

Emerald Land admits they reviewed the documents in preparing for depositions and in drafting motions. *Id.* [Emerald Land filed a Supplemental Opposition to "assist in answering questions posed by the Court at the hearing" by providing a chronology. ECF No. 286.]

II. <u>Law and Analysis</u>

   A. <u>Rule 37 authorizes sanctions for failure to obey a discovery order.</u>

"Fed. R. Civ. P. 37(b) empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, Fed. R. Civ. P. 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012). Although a court "has broad discretion under Rule 37(b) to

fashion remedies suited to the misconduct," usually, "a finding of bad faith or willful misconduct [is required] to support the severest remedies under Rule 37(b) – striking pleadings or dismissal of a case." *Id.* (internal citations and quotations omitted). Lesser sanctions do not require a finding of bad faith or willfulness. *Id.* (citing *Chilcutt v. United States*, 4 F.3d 1313, 1323 n.23 (5th Cir. 1993), *cert. den.*, 513 U.S. 979 (1994)).

Rule 37(b)(2)(A), provides that if a party "fails to obey an order to provide or permit discovery," a court "may issue further just orders," including:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Thus, a party may seek sanctions and a finding of civil contempt for another party's violation of a court's protective order. *See Sandoval v. Carrco Painting Contractors*, 2016 WL 8679288, at *2 (W.D. Tex. Nov. 16, 2016) (citing *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 290 (5th Cir. 2002) (upholding civil contempt order imposed as sanction for violation of a protective order)). "A party seeking a civil contempt order must demonstrate, by clear and convincing evidence, '(1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with

6

the court's order.'" *Lyn-Lea*, 283 F.3d at 291 (citing *FDIC v. LeGrand*, 43 F.3d 163, 165 (5th Cir. 1995)).

Moreover, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified, or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

### B. The Protective Order (ECF No. 81) controls the inadvertent disclosure of the disputed documents.

The Protective Order (ECF No. 81) governs the parties' obligations in documents containing "Confidential Information." ECF No. 81 at 1-2. "Confidential Information" includes:

> (a) internal financial information regarding costs, expenses, revenue and/or profitability; (b) commercial information, including but not limited to current and future business plans, business ownership, research and development data, reservoir data, patent plans or data, as well as operational technologies, technical methods, practices, and procedures, which trade secrets or commercial information is of technical or commercial advantage to its possessor; and (c) any other proprietary information . . .related to the business of the party that derives . . . value from not being known to business competitors . . ., the disclosure of which may cause harm to the disclosing party.

*Id.* at 1-2. "Document[s]" include "writings, drawings, graphs, charts, photographs, recordings, images, and other data compilations . . . from which information can be obtained, whether produced or created by a Party or another person." *Id.* at 2. "Confidential Document" means any "[Document] which any Party designates as Confidential." *Id.*

7

The Protective Order (ECF No. 81) applies to all designated "Confidential Documents" or "Confidential Information" which any Party designates as such and produces subject to the terms of the Order. *Id.* at 3. However, the Protective Order does not prevent a Party from challenging a confidentiality designation. ECF No. 81 at 5. Rather, "[o]n any challenge to the designation of any document or other record or information as confidential, the burden of proving that the designation is warranted and justified shall lie with the Party asserting the document contains Confidential Information." *Id.* at 6. The challenging party is obliged to: (1) notify opposing counsel of the documents to be declassified and the reasons to do so; (2) allow 10 days for consideration and negotiation; and (3) absent agreement, submit the dispute to the Court for resolution. *Id.*

In addition to items designated as "Confidential," the Protective Order (ECF No. 81) establishes a protocol for inadvertent disclosure. *Id.* at 9. The asserting party must notify the receiving party of an inadvertent disclosure. Then, upon request, the receiving party must promptly sequester and return the confidential documents, and must destroy any copies without using confidential information. *Id.* The asserting party has the right to designate documents as confidential, and to invoke these protective provisions. And if the parties dispute the designation, then the reciving party must seek relief from the Court by filing a Motion to Compel. *Id.* at 9-10.

C. <u>Emerald Land did not comply with the Protective Order (ECF No. 81).</u>

Most of the facts underlying the Motion are undisputed. The Court entered the Protective Order (ECF No. 81) on May 14, 2019. ECF No. 81. The Protective

8

Order (ECF No. 81) applies to documents provided in response to Emerald Land's subpoenas. ECF Nos. 262 at 6.[5] The Protective Order was in effect when the disputed documents were exchanged. And the Protective Order controlled inadvertent disclosure.

However, the parties disagree about several related issues, including whether Emerald Land substantially complied – or attempted to comply – with the Protective Order, and whether Chevron precluded any discussion of the issue before filing the Motion. And ultimately, the parties disagree about whether some of the disputed documents are, in fact, confidential.

The record establishes that Chevron retained Wild Well to develop a plan to perform the abandonment of wells and other decommissioning work on Emerald Land's property. ECF No. 249-4 at 2, ECF No. 249-5 at 1. Coleman attests he prepared an expert report outlining this plan. ECF No. 249-4 at 2. In preparing his report, he composed numerous drafts of various sections of the report. *Id.*

On January 27, 2021, Wild Well responded to Emerald Land's Subpoena Duces Tecum for production of materials related to its expert report. *Id.*; *see also* ECF No.

---

[5] According to Emerald Land, the Wild Well report is a "compendium of expert opinions and data supplied by three different companies: Wild Well, Warrior Energy Services ('Warrior'), a Wild Well affiliate, and Broussard Bros. Inc. ('Broussard Bros.')." ECF no. 262 at 6. Emerald Land issued subpoenas to all three for their file materials. *Id.* Wild Well and Warrior responded directly to Emerald Land through its in-house legal department, and included a privilege log that referenced none of the documents. ECF No. 262 at 7. Emerald Land asserts Wild Well's updated privilege log from March 12, 2021 did not add any of the documents at issue, and that none of the documents were produced with a confidential stamp. *Id.*

286. Coleman attests Wild Well inadvertently produced the following documents to Emerald Land:

> EMERALD LAND_WILD WELL_SDT_112860-112866; 128325; 128326; 128327; 128328; 128403; 129077; 129079; 129080; 129142; 129289; 129436; 129655; 129802; 130022; 130244; 130467; 130689; 130909; 131129; 131349; 131571; 131605; 131830; 132016; 132199; 132873; 133546; 134223; 134900; and 001_1.PNG – 007_7.PNG.

ECF No. 249-4 at 2. Coleman attests that these documents include drafts of Wild Well's final expert report dated November 20, 2020, as well as Wild Well's draft tables, figures, and calculations specifically associated with drafts of its final expert report. *Id.* He further attests the drafts "contain no facts, data, or assumptions that were provided to Wild Well by Chevron's counsel." *Id.* at 3.

Grossman attests Wild Well's drafts included tables, figures, and calculations that were subsequently eliminated, modified, or changed through consultation with counsel of record. ECF No. 249-5 at 1. Grossman attests he had several discussions with Coleman concerning the appropriate scope of Wild Well's subpoena responses. *Id.* Grossman is clear that Coleman was instructed not to produce privileged documents, and thus, that the disclosure was inadvertent. *Id.*

Grossman discovered a draft report was included in Wild Well's Subpoena Duces Tecum response on January 27, 2021. *Id.* Grossman informed Thibodeaux and Miller. *Id.*; *see also* ECF Nos. 249-3 at 3, 286 at 2. Grossman demanded immediate return of the listed documents and destruction of any copies, and otherwise, if challenged, that they be sequestered until a ruling from the Court. ECF Nos. 249-3 at 3, 249-5 at 4. Grossman plainly complied with the Protective Order.

On February 23, 2021, Emerald Land filed a Notice of Proposed Agenda in connection with the Court's February 24, 2021 status conference. ECF No. 235. Emerald Land's agenda included the issue of Coleman's deposition date and Chevron's assertion of the "claw back" provision of the Protective Order. *Id.* at 2. At the status conference (ECF No. 240), Emerald Land represented it was working on a substantive response to Chevron's email hopefully that same day, and that the issue is premature until they can get out a response. But two days later, Emerald Land filed its Exhibit and Witness List (ECF No. 244) including documents Chevron asserts were inadvertently disclosed. ECF No. 244 at 21-30. Then, on March 2, 2021, Emerald Land responded to Grossman's email concerning the inadvertent disclosure with its position concerning the asserted privileges and inadvertent disclosure. ECF Nos. 249-3 at 1, 286 at 2. Grossman agreed that one document – 128328 – was prepared and produced by a third party and eliminated it from the request. ECF Nos. 253-1 at 5, 263 at 1. Grossman further stated the email exchange constituted a formal discovery conferenced and advised Chevron would file a motion for relief. *Id.* Grossman further noted objection to use of any of the referenced documents at Coleman's deposition. *Id.*

The Protective Order (ECF No. 81) secured Chevron's right to promptly demand return of the inadvertently disclosed documents from the receiving party. ECF No. 81. It allowed Emerald Land to file a motion to compel thereafter. But it did not allow Emerald Land to review and utilize the disputed documents. And it

certainly did not allow Emerald Land to withhold the disputed documents pending a discussion with Chevron, a deposition, or anything else.

Instead, the Protective Order required Emerald Land to sequester, return, and destroy copies of the disputed documents upon Chevron's notice, and to seek relief from the Court if needed. And Emerald Land simply did not do so. Thus, Emerald Land failed to comply with the Protective Order.

In several respects, Emerald Land failed to comply with the Protective Order.[6] Moreover, after Chevron informed Emerald Land of the inadvertent disclosure of allegedly privileged documents and information, it is apparent that Emerald Land reviewed and considered the disputed documents.[7] ECF No. 249-3 at 1. The Protective Order prevents a party "who receives privileged information by reading a privileged Document [from] utilizing or employing that information, directly or indirectly, in the prosecution or defense of this Lawsuit." ECF No. 81. Emerald Land, to date, has only agreed to return and destroy "112860-112866 and 128325-128327" which it agrees are privileged. Emerald Land did not seek to compel production.

### D. Chevron is entitled to sanctions of attorney's fees and costs in bringing this motion.

---

[6] Rule 26(b)(5)(B) of the Federal Rules of Civil Procedure also requires that after notification that information was produced that is subject to a claim of privilege, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved . . . and may promptly present the information to the court under seal for a determination of the claim." Fed. R. Civ. P. 26(b)(5)(B).

[7] Emerald Land also asserted its intentions to depose Chevron's expert regarding the disputed documents and to introduce the documents at trial. ECF Nos. 249-3 at 1-2, 244.

Because Emerald Land failed to comply with the Protective Order, Chevron is entitled to recompense in some form. The Court entered the Protective Order to prevent the type of potential prejudice at issue here – specifically, revelation of privileged information that cannot now be "unseen" and that may factor into the strategic undercurrents of the case. There is no direct remedy for that potential prejudice once incurred.

However, the Court may award costs and attorney's fees as a remedy, even where noncompliance was not intentional. And the Court will do so here. Within 14 days of this Order, Chevron will file under seal a Notice listing and evidencing the costs and fees incurred in prosecuting the Motion.

Furthermore, as noted above, the Court may impose stricter sanctions upon a finding of willful noncompliance or "bad faith." Emerald Land escapes this finding, but narrowly. The parties agreed upon the text of the Protective Order before submitting it to the Court. Its relevant provisions were clear. And again, Emerald Land plainly failed to comply with them. Little justification is possible. However, Emerald Land seems to have made some effort to inform the Court about, and to resolve, the dispute. Chevron fully complied. But Chevron's declaration in email traffic preceding this Motion – though perhaps understandable – precluded Emerald Land from complying at that belated point.

Thus, the record does not fully support a finding of "bad faith." Absent that finding, no additional sanctions are warranted.

### E. Emerald Land's request to compel production of the remaining documents is denied.

13

In the interests of efficiency, the Court construed Emerald Land's briefs and arguments to imply a request to compel production of the disputed documents not otherwise addressed.[8]  Essentially, Emerald Land seeks a determination that some of the disputed documents are not, in fact, confidential.

Specifically, Chevron argues draft reports and disclosures of testifying experts are shielded from discovery as privileged work product.  ECF No. 249-1 at 8 (citing Fed. R. Civ. P. 26(b)(4)(B)).[9]  Rule 26(b)(4) protects communications between a testifying expert and a party's attorney, except for communications relating to expert compensation, attorney-provided facts, data, or assumptions relied upon in forming expert opinions.  Fed. R. Civ. P. 26(b)(4)(C).  Chevron objects to production of Wild Well's draft reports, including draft tables, calculations, figures, and charts protected under Rule 26(b)(4).  ECF Nos. 249-1 at 9, 271 at 5-6.  Coleman attested that the inadvertently produced documents are privileged drafts of expert reports, draft calculations, draft tables, and draft figures prepared by Wild Well, and that the documents do not contain facts, data, or assumptions that were provided by Chevron's counsel.  ECF Nos. 294-4, 271 at 4.

---

[8] The parties agreed prior to the hearing concerning the privilege designation of certain documents: WILD WELL_SDT_12838, 112860-112866 and 128325-128327. Chevron agreed 12838 was not privileged and withdrew its assertion of privilege.  Emerald Land agreed 112860-112866 and 128325-128327 were privileged and returned and destroyed all copies. Emerald Land's motion to the extent it applies to these documents is DENIED AS MOOT.

[9] Draft expert reports, in any form, are protected.  Fed. R. Civ. P. 26(b)(4)(B).

14

Chevron correctly notes that, under the Protective Order, inadvertent disclosure shall not be deemed a waiver of attorney-client privilege or work-product privilege. *Id.* Nevertheless, Chevron clarifies that great measures were taken to ensure production of over 150,000 responsive documents did not include privileged documents or communications, and that any disclosure was inadvertent and did not waive the privilege. *Id.* at 10-11; *see also* ECF No. 249-5.

Emerald Land contends 129077, 129079, and 134900 are stand-alone notes and memorandum prepared by Wild Well as part of its analysis, separate from its report. ECF No. 262 at 4. Emerald Land also argues that the documents include unprotected assumptions and foundational date on which Wild Well's opinion is based. *Id.* Emerald Land asserts the remainder of the documents are styled as draft reports, which it admits are privileged. *Id.* However, Emerald Land contends the privilege does not extend to portions of the draft reports that identify facts, data, or assumptions on which the expert relied. *Id.* at 4-5 (citing *United States ex rel Wall v. Vista Hospice Care*, 319 F.R.D. 498, 510-11 (N.D. Tex. 2016)).[10]

Chevron responds that Emerald Land attaches excerpts of summary charts from draft reports and mischaracterizes them as purely factual in nature. ECF No. 271 at 4-5. And Chevron contends that adopting Emerald Land's position would eliminate the protections under Rule 26(b)(4) protecting draft reports. *Id.* Regardless,

---

[10] According to Emerald Land in its Supplemental Opposition (ECF No. 286), the parties agreed to postpone Wild Well's March 31, 2021 deposition until the Court resolves this discovery dispute. ECF No. 286 at 2.

Chevron asserts Emerald Land is not entitled to retain or discover entire drafts. *Id.* at 6.

### 1. Wild Well's materials are protected under Rule 26(b)(4)(B), (C).

Emerald Land argues 129077, 129079, and 134900 consist of "notes, task lists, outlines, memoranda, presentations, and draft letters authored by" the expert or other third parties that are not privileged. *Id.* at 9. The documents were compiled by Wild Well in formulating its opinion, and that 129077 and 129079 include summary charts comparing Emerald Land's expert's costs estimates to Chevron's costs. *Id.*

Emerald Land further contends that 134900 identifies data and assumptions relied upon by Wild Well, including day rates driving costs and items Wild Weld Well did not consider in formulating its cost estimate opinions. *Id.* Emerald Land attaches excerpts of charts in 134900, arguing this information is not privileged and that "day rates" are data and assumptions used in formulating Wild Well's opinion. *Id.* Emerald Land further asserts the chart referencing "Items Not Considered" is key to showing Chevron's experts ignored real world obstacles, thus arriving at a "low-ball" estimate. *Id.* at 11. Emerald Land asserts that cost estimates compared to Emerald Land's, the day rates on which those estimates rely, and the list of "items not considered" are not privileged. *Id.*

An expert's "spreadsheets, graphs, and analyses . . . [which] are interpretations of data that reflect counsel's mental impressions and result from the expert's and counsel's collaborative efforts to organize, marshal, and present data" are "separate and distinct from the underlying facts and data themselves." *In re Elysium Health-*

16

*ChromaDex Litigation*, 2021 WL 1249223, at *2 (S.D.N.Y. Apr. 5, 2021) (citing *Davita Healthcare Partners, Inc. v. United States*, 128 Fed. Cl. 584, 591 (Fed. Cl. 2016)). And "spreadsheets, graphs, presentations, and charts are protected under Rule 26(b)(4)(B), so long as the documents were prepared by the testifying expert to be included in draft expert reports." *Id.*

However, the 2010 Advisory Committee's Note states that the exception under Rule 26(b)(4)(C)(iii) "is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed" and "[m]ore general attorney-expert discussions about hypotheticals, or exploring possibilities about hypothetical facts, are outside this exception." Fed. R. Civ. P. 26(b)(4)(C), Advisory Committee Note to 2010 Amendment. Moreover, Coleman attests that the production included Wild Well's draft tables, figures, and calculations specifically associated with drafts of Wild Well's expert report. ECF No. 294-4 at 3. Coleman attests these "drafts contain no facts, data, or assumptions that were provided to Wild Well by Chevron's counsel." *Id.* at 3. Thus, Emerald Land fails to establish sufficient evidence to establish the documents fall within the exceptions of Rule 26(b)(4)(C).

### 2. Coleman's draft reports are protected under Rule 26(b)(4)(B), (C).

Emerald Land argues the remaining documents, though styled as draft reports which are typically privileged, include portions that identify "facts or data that the attorney provided and the expert considered" or "assumptions that the attorney provided and the expert relied on." ECF No. 262 at 12 (citing *Wall*, 319 F.R.D. at 508). Emerald Land contends the remaining Wild Well's draft reports at issue include

17

portions falling under that exception and are not privileged. *Id.* Emerald Land referenced redlined draft reports, arguing they show Kean Miller, counsel to Chevron, provided those facts, data, and assumptions to Wild Well. *Id.* at 13 (citing to excerpts of the draft reports).[11]

In *Wall*, the court found that the provisions of Rule 26(b) did not afford protection in draft reports when counsel provides facts, data, and assumptions that are relied upon and included in the final report. *Wall*, 319 F.R.D. at 508-09 (requiring disclosure of those portions of a draft expert report transmitted between an attorney and expert that identify facts, data, or assumptions provided by an attorney). However, the remainder of any draft report would be covered as work-product under Rule 26(b)(4)(B) and Rule 26(b)(4)(C). *Id.* at 509. Here, by contrast, there is no evidence that Coleman's expert report was "ghost-written" by counsel for Chevron.

The 1993 Amendment Advisory Committee's Note to Rule 26 states:

> Rule 26(a)(2)(B) does not preclude counsel from providing assistance to experts in preparing the reports . . . The report is to disclose the data and other information considered by the expert and any exhibits or charts that summarize or support the expert's opinions. Given this obligation of disclosure, litigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions – whether or not ultimately relied upon by the expert – are privileged or otherwise protected from disclosure when such persons are testifying or being deposed.

---

[11] Emerald Land further notes that redlined draft reports demonstrate that Wild Well changed the assumptions underlying its opinion. *Id.* (citing to excerpts referencing the deletion of a note regarding potential increase in durations of operations with new information and obstacles). Emerald Land contends this shows Wild Well did not originally operate on that assumption and only relied on it after Chevron asked it to. *Id.* at 14. Emerald Land argues the redlines show counsel to Chevron instructed Wild Well to change the facts, data, and assumptions underlying its analysis, thus those portions are not privileged. *Id.*

Fed. R. Civ. P. 26(a)(2)(B), Advisory Committee Note to 1993 Amendment.

The 2010 Advisory Committee's Note states that discovery authorized by the exceptions under Rule 26(b)(4)(C) does not extend beyond those specific topics. Fed. R. Civ. P. 26(b)(4)(C), Advisory Committee Note to 2010 Amendment. Rule 26(b)(4)(C)(ii) "applies only to communications 'identifying" the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected." *Id.* Likewise, the exception under Rule 26(b)(4)(C)(iii) "is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed" and "[m]ore general attorney-expert discussions about hypotheticals, or exploring possibilities about hypothetical facts, are outside this exception." *Id.*

A party seeking discovery outside of the three exceptions enumerated in Rule 26(b)(4(C), or regarding draft expert reports or disclosures, must show "that the party has a substantial need for the discovery and cannot obtain the substantial equivalent without undue hardship." *Id.* Here, Chevron establishes the documents at issue do not fall under the exceptions to Rule 26(b)(4)(C). Coleman attests he was retained by Chevron to develop a plan to perform the abandonment of wells and other decommissioning work on Emerald Land's property. ECF No. 294-4 at 3. He was asked to prepare an expert report outlining that plan, of which he composed numerous drafts of various sections of the report. *Id.* Wild Well inadvertently produced documents in response to Emerald Land's Subpoena Duces Tecum, including drafts of his final report dated November 20, 2020. *Id.* Coleman attests that the "drafts contain no facts, data, or assumptions that were provided to Wild

19

Well by Chevron's counsel." *Id.* at 3. Chevron's counsel Grossman attests to the same. ECF No. 249-5.

Emerald Land has also failed to show that it cannot obtain substantially equivalent information without undue hardship. Emerald Land may explore non-privileged data underlying the reports by deposition. Thus, there is no basis to compel production by Chevron (or to allow retention by Emerald Land).

### III. Conclusion

Accordingly, IT IS ORDERED that Chevron's Motion for Contempt and Sanctions (ECF No. 249) is GRANTED IN PART to the extent it seeks a finding that Emerald Land violated the Protective Order and an award of costs and fees. Emerald Land is obliged to return and destroy the disputed documents – as identified above – in accordance with the Protective Order. And pursuant to Local Rule 54.2, Chevron shall file a motion for attorney's fees and costs within 14 days of the date of this Order.

IT IS FURTHER ORDERED that Chevron's Motion (Doc. 249) is DENIED IN PART in all other respects, including to the extent it seeks an express finding of civil contempt or additional sanctions.

IT IS FURTHER ORDERED that the implied request to compel production of documents (ECF No. 262) is DENIED.

SIGNED on Friday, May 21, 2021.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE