UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| EMERALD LAND CORP | CASE NO. 6:17-CV-01655 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| TRIMONT ENERGY (BL) LLC ET AL | MAGISTRATE JUDGE PEREZ-MONTES |

MEMORANDUM RULING

The present matters before the Court are the (1) Motion for Partial Summary Judgment on All Claims Related to the Removal, Restoration, or Decommissioning of Equipment and Related Facilities Under the 1990 Surface Lease [ECF No. 164]; (2) Motion for Summary Judgment on Prescription of Tort Claims [ECF No. 166]; (3) Motion for Summary Judgment on Prescription of Surface Leases [ECF No. 168]; and (4) Motion to Strike Declaration of Rudy Sparks and Declaration of M. Taylor Darden [ECF No. 216]. Each motion was filed by Chevron U.S.A. Inc. ("Chevron") and opposed by Emerald Land Corporation ("Emerald").

I.
FACTUAL BACKGROUND

Emerald is a Louisiana corporation based in St. Mary Parish, Louisiana, where it owns approximately 8,000 acres of land located along the Atchafalaya River immediately west of Morgan City. The tract includes over 6,000 acres of natural marsh land below the Intracoastal

1

Waterway in the Atchafalaya Basin ("the Property").[1] The Property is within the Bateman Lake Field.[2]

The Property has been the subject of three Mineral Leases ("the Mineral Leases") entered into by predecessors to Emerald and Defendants.[3] The Mineral Leases provided Defendants and Chevron's predecessor, Texaco, with the exclusive right to construct lines, tanks, storage facilities, buildings, stations and other structures necessary "to produce, save, take, care of treat and transport" oil and gas products on over 6,000 acres of Emerald's Property.[4] All three Mineral Leases contain an identical damages provision, requiring the lessees to pay for any damage to the Property: "Lessee shall pay all damages caused by its operations hereunder to the land, buildings and improvements presently existing, and crops now or hereafter planted."[5]

In 1960, Emerald and Chevron entered into a surface lease on a small, .83 acre plot located within the area covered by the Mineral Leases.[6] The surface lease was made "subject to all valid servitudes, mineral leases, and surface leases or other encumbrance resting upon the property, recorded or unrecorded."[7] Sometime after this surface lease was executed, a large Compressor Station was constructed on the far southern end of the Property.[8] In 1990, Emerald and Chevron entered into a surface lease containing nearly identical provisions regarding the same .83 acre plot.[9] The 1960 and 1990 leases (collectively, the "Surface Leases") each provide that:

---

[1] ECF Doc. 177, Ex. A at pp. 51:4–12; 53:7–16 (30(b)(6) Deposition of Emerald Land Corporation); Ex. B, Declaration of M. Taylor Darden at ¶ 3.
[2] ECF Doc. 177, Ex. B, Declaration of M. Taylor Darden at ¶ 5.
[3] *Id.* at ¶ 6.
[4] Chevron and Texaco are referred to collectively as "Chevron." ECF Doc. 177, Ex. A at exhibits 3, 4, and 5, ¶ 1, attached thereto. (30(b)(6) Deposition of Emerald Land Corporation)
[5] ECF Doc. 177, Ex. A at pp. 85–88, referring to ¶ 13 of exhibits 3, 4, and 5 attached thereto. (30(b)(6) Deposition of Emerald Land Corporation)
[6] ECF Doc. 177, Ex. B, Declaration of M. Taylor Darden at ¶ 9.
[7] ECF Doc. 164-3 p. 6 at ¶ 2 (1960 surface lease)
[8] ECF Doc. 177, Ex. B, Declaration of M. Taylor Darden at ¶ 10; Ex. E, Declaration of Rudy Sparks at ¶ 3.
[9] ECF Doc. 164-3 p. 10–11 at ¶ 3 (1990 surface lease).

Lessee will pay all damages which may be inflicted or caused by it to Lessor, its agents, employees and assigns, in the occupation, use and operation of said premises. . . .

\*\*\*

Lessee assumes all responsibility and liability for the condition of the leased premises during the time of this lease or any extension thereof and will indemnify and hold Lessor harmless against any claim, liability or loss on account of injury to (including death of) persons, or damage to property, including in all instances costs, expenses and attorney's fees incidental thereto, arising wholly or in part out of or in anywise connected with its occupation, use and operation of the leased premises.

\*\*\*

The Lessee is hereby given the right to remove any and all improvements placed by it on the leased premises during or within six (6) months after the termination of this lease, but anything contained herein to the contrary notwithstanding, it is understood and agreed that Lessee is without obligation so to do; however, any of said improvements which are not removed within said six (6) months period following the termination of this lease, shall become the property of Lessor without any liability for the payment thereof whatsoever.

Lessee shall not assign nor sublease this lease in whole or in part without first obtaining Lessor's written consent.[10]

The 1960 surface lease required annual rent of $25 and the 1990 surface lease required $50 per year.[11] The 1990 Surface Lease had a term that ended on March 31, 2000. Chevron ultimately assigned its interest in the Mineral Leases and related contracts, including the Surface Leases, to EnerVest.[12] The interests in the Mineral Leases and related contracts changed hands multiple times thereafter.[13] Ultimately on May 5, 2020, Trimont Energy BL, the last remaining assignee of

---

[10] *Id.*
[11] *Id.*
[12] *See* Ex. B-2 to Document 177, Act of Assignment from Texaco to EnerVest at p. 6; Ex. A at p. 116 (30(b)(6) Deposition of Emerald Land Corporation)
[13] *See* Ex. A to Document 177, at pp. 94–95. (30(b)(6) Deposition of Emerald Land Corporation)

lessee interests under the Mineral Leases, "agreed that the Mineral Leases have terminated" and therefore released "all ... right, title and interest in and to the Mineral Leases."[14]

Emerald Land has demanded the removal of the Compressor Station and related improvements from the Property and asserts that the Compressor Station is built on creosote pilings, a known carcinogen and toxic substance that is leaking into the marsh land that is now used for recreational fishing and crawfish farming.[15] Chevron has estimated it will cost $2.3 million to remove the Compressor Station.[16] Emerald's estimate to remove the facility is over $6 million.[17]

On August 15, 1995, Emerald and Chevron entered into a Produced Water Disposal Agreement, which granted permission to drill two wells for saltwater disposal. This agreement had a stated term of five (5) years.

## II.
### LAW AND ANALYSIS

A.   **Motion to Strike.**

Chevron has filed a motion to strike evidence submitted by Emerald in oppositions to certain of Chevron's motions for summary judgment. Chevron seeks to strike (1) the Declaration of Rudy Sparks, and (2) the Declaration of M. Taylor Darden.

1.   Declaration of Rudy Sparks.

Chevron seeks to strike the Declaration of Rudy Sparks on the basis that Mr. Sparks is not qualified to offer an expert opinion pursuant to Federal Rule of Evidence 702. Mr. Sparks is the

---

[14] *Id.* at p. 95, Exhibit 10 thereto (30(b)(6) Deposition of Emerald Land Corporation and Release of Mineral Leases)
[15] Ex. E to Document 177, Declaration of Rudy Sparks, at § 10; Ex. C to Document 177, Declaration of Wayne Cantrell, at § 7.
[16] Ex. B-5 to Document 177, Expert Report of Wild Well Control at p. 29.
[17] Ex. D to Document 177, Expert Report of Charles Norman at pp. 61-64.

president of Emerald Land. In his declaration, he testifies that he reviewed the expert report of Meaghan Schmidt. Ms. Schmidt is Chevron's expert witness who opined, in part, regarding the location of the Compressor Station on the Emerald Property. Mr. Sparks contends that he reviewed the coordinates used by Schmidt and that he disagrees with her conclusions as to the location of the Compressor Station. Chevron asserts that Mr. Sparks' declaration should be stricken on the ground that it is not competent expert testimony. In this regard, Chevron argues that Mr. Sparks lacks the requisite technological or specialized knowledge to give an opinion on the location of the station and that his methodology is flawed.

Emerald counters that it is not offering Mr. Sparks' testimony as expert testimony pursuant to FRE 702 but rather as lay witness testimony under FRE 701. Under Rule 701, a lay witness may offer testimony that is:

> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.[18]

The Fifth Circuit has explained that "[e]ven if such testimony requires some specialized knowledge, it is admissible so long as the lay witness offers straightforward conclusions from observations informed by his or her experience."[19] Mr. Sparks' declaration includes a statement that his opinion is based upon his thirty years of managing land in South Louisiana and utilizing the ArcGIS' platform—a computer-based geographic and mapping platform. Mr. Sparks further explained how he reached his conclusions regarding the placement of the property at issue.

---

[18] Fed. R. Evid. 701.
[19] *U.S. v. Sanjar*, 876 F.3d 725, 738 (5th Cir. 2017), citing *U.S. v. Riddle*, 103 F.3d 423, 429 (5th Cir. 1997).

5

The Court concludes that Sparks' declaration testimony satisfies the requirements of FRE 701 and that Chevron has not stated sufficient cause to strike his declaration. Sparks explained his methodology and his experience utilizing that methodology. His testimony is not based on scientific, technical or other specialized knowledge because Sparks utilized the standard tools and methodologies that he uses in connection with his land management business. Any question regarding the weight to be given to Mr. Sparks' testimony is a question for the trier of fact, not the Court on a motion for summary judgment.

2. <u>Declaration of M. Taylor Darden.</u>

Next, Chevron seeks to strike the Declaration of M. Taylor Darden. Mr. Darden is Emerald's Corporate Secretary and Treasurer. Chevron argues that two of the paragraphs contained in Mr. Darden's declaration contradict his prior deposition testimony. Those two paragraphs state:

> 22. To the best of my knowledge, EnerVest continued to utilize the land and the portion of the Compressor Station on the .83 acre parcel set forth in the Surface Leases after Chevron transferred its interest in the Surface Leases to EnerVest.
>
> 23. I have no information to suggest that EnerVest's successors, Goldking, Dune, and Whitney, also did not continue to utilize the land and the portion of the Compressor Station on the .83 acre parcel set forth in the Surface Leases after succeeding to EnerVest's rights as mineral lessee.[20]

Chevron argues that Mr. Darden had previously testified in the Rule 30(b)(6) deposition of Emerald Land that "[n]obody within the current management within Emerald knew [the Compressor Station] was there" because no one ever traveled down to that part of the property.[21] He testified that he had no knowledge of the Compressor Station because he was not provided with

---

[20] ECF Docs. 177-2, 179-2, 181-2 at ¶¶ 22, 23.
[21] ECF Document 216, Exhibit B: November 10, 2020 30(b)(6) Deposition of Emerald Land Corporation through M. Taylor Darden at 105:4–10.

"any information concerning this equipment at all."[22] He further testified that his knowledge of the Compressor Station comes solely from photographs: "...I have seen photographs of it ... I have never been down there, so I am ... basing it on pictures."[23] When asked if any other entity asserted an ownership interest in the Compressor Station, Mr. Darden replied: "Not that I am aware of."[24]

First, even if the Court were to find that the two cited paragraphs in Darden's declaration contradicted his prior testimony, Chevron has stated no basis to strike the entirety of the declaration beyond those two paragraphs. Accordingly, the Court will only consider whether to strike paragraphs 22 and 23.

Chevron asserts that Mr. Darden's declaration and deposition testimony are contradictory without providing much in the way of explanation. The Court disagrees that the testimony is contradictory. In both his declaration and the 30(b)(6) deposition, Mr. Darden indicates a lack of specific knowledge on the topic of the question. While Mr. Darden stated more affirmatively that he lacked specific knowledge of the topics during the Rule 30(b)(6) deposition, his testimony in paragraphs 22 and 23 of the declaration also reflect that Darden does not have specific knowledge that EnerVest or its successors actually used the Compressor Station. In short, any differences between Darden's deposition testimony and his declaration go to the weight, not the admissibility of his testimony.

For these reasons, the Court denies Chevron's Motion to Strike [ECF No. 216] as to both the Declaration of Rudy Sparks and the Declaration of M. Taylor Darden.

---

[22] *Id.* at 116:22-23.
[23] *Id.* at 105:23–106:2.
[24] *Id.* at 117:5–10.

## B. Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[25] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[26] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[27] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[28]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[29] "Credibility determinations are not part of the summary judgment analysis."[30] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the

---

[25] Fed. R. Civ. P. 56(a).
[26] *Id.*
[27] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[28] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[29] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[30] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

existence of an element essential to that party's case, and on which that party will bear the burden of proof."[31]

### C. Chevron's Motion for Partial Summary Judgment on All Claims Related to the Removal, Restoration, or Decommissioning of Equipment and Related Facilities Under the 1990 Surface Lease.

In its first motion for partial summary judgment, Chevron seeks to dismiss all claims for damages for the cost of removal, restoration or decommissioning associated with the Compressor Station and related facilities built and maintained pursuant to the 1960 and 1990 Surface Leases. Chevron argues that the 1960 and 1990 Surface Leases relieves it of any obligation to remove (or to pay to remove) the Compressor Station and related facilities because the Surface Leases transferred ownership of the Compressor Station to Emerald Land. The Surface Leases each provide that:

> The Lessee is hereby given the right to remove any and all improvements placed by it on the leased premises during or within six (6) months after the termination of this lease, but anything contained herein to the contrary notwithstanding, it is understood and agreed that Lessee is without obligation so to do; however, any of said improvements which are not removed within said six (6) months period following the termination of this lease, shall become the property of Lessor without any liability for the payment thereof whatsoever.[32]

Emerald Land counters that the Surface Leases are subject to the terms and conditions of the Mineral Leases, which contain language expressly obligating Chevron to pay for any damage to the Property.[33] Emerald Land also asserts that there is a factual dispute as to whether the entirety of the Compressor Station is contained within the .83 acres subject to the two Surface Leases.[34]

---

[31] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
[32] ECF Doc. 164-3 p. 10–11 (1990 surface lease).
[33] "Lessee shall pay all damages caused by its operations hereunder to the land, buildings and improvements presently existing, and crops now or hereafter planted."
[34] *See* Ex. E to Document 177, Declaration of Rudy Sparks,

9

Emerald Land further argues that there is no evidence that Chevron's assignees ceased using the Compressor Station. Finally, Emerald Land claims that Chevron's interpretation of the contact language would lead to absurd consequences.

The Court agrees with Emerald Land that the 1960 and 1990 Surface Leases are subject to the terms of the Mineral Leases. The Surface Leases expressly state that they are "subject to all valid servitudes, mineral leases, and surface leases or other encumbrance resting upon the property, recorded or unrecorded."[35] Chevron argues that this generic language does not render the Surface Leases subject to the terms of the Mineral Leases with respect to the Compressor Station and related facilities. However, there is no dispute that the .83-acre tract at issue in the Surface Leases was part of the 6,000 acres subject to the Mineral Leases. The execution by the parties of the Surface Leases did not somehow remove that tiny portion of the overall property from the terms of Mineral Leases. As such, the .83-acre tract remained subject to the terms and conditions of the Mineral Leases even though this tract was also subject to the terms and conditions of the Surface Leases. Chevron is not relieved from any claim for damages on the Property pursuant to the Mineral Leases simply because the activity occurred on the .83-acre tract covered by the Surface Leases.

Further, the Surface Leases also contain provisions that make the lessee liable for any damage to the .83 acres. The 1960 and 1990 Surface Leases each state that:

> Lessee will pay all damages which may be inflicted or caused by it to Lessor, its agents, employees and assigns, in the occupation, use and operation of said premises. . . .[36]

---

[35] ECF Doc. 164-3 p. 6 at ¶ 2 (1960 surface lease)
[36] ECF Doc. 164-3 p. 10–11 (1990 surface lease).

If the Court were to accept Chevron's interpretation of the Surface Leases—that the provision relating to the removal of improvements also relieves Chevron of any liability for damage to the .83 acres—the damages provisions in the Surface Leases would be rendered meaningless. It is a basic tenet of contract interpretation that, to the extent possible, the terms of a contract should be construed so as not to render any other term in the contract meaningless or superfluous.[37] Here, Chevron's reading of the Surface Leases not only renders the damages provisions of those leases meaningless, it renders those provisions meaningless based on a provision that addresses an entirely different question: Chevron's right to remove improvements and the ownership of improvements that are not removed.

Further, the Court finds that Chevron's interpretation of the Surface Leases would lead to absurd consequences. Under Louisiana law, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."[38] The Louisiana Supreme Court has held that:

> Even if the words are fairly explicit, it is our duty to refrain from construing them in such a manner as to lead to absurd consequences. *Texaco v. Vermilion Parish School Board*, 244 La. 408, 152 So.2d 541 (1963); *National Roofing and Siding Co. v. Giaise*, 434 So.2d 85 (La.App. 5th Cir.1982), writ denied, 435 So.2d 443 (La.1983). When a literal interpretation will produce absurd consequences, the court may consider all pertinent facts and circumstances, including the parties' own conclusion of the instrument's meaning, rather than adhere to a forced meaning of the terms used. La.Civ.Code art. 2046; *Kendrick v. Garrene*, 233 La. 106, 96 So.2d 58 (1957); *Cardos v. Cristadoro*, 228 La. 975, 84 So.2d 606 (1955).[39]

If the Court were to accept Chevron's interpretation of the Surface Leases, the consequence would be that, for annual rents of $25 and $50, Emerald Land not only agreed to absolve Chevron of any

---

[37] *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550 (5th Cir. 2004), citing *Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004)
[38] La. Civ. Code Art. 2046.
[39] *Cashio v. Shoriak*, 481 So.2d 1013 (1986).

11

damage it caused to Emerald's property, it agreed to assume liability for any environmental damage caused on the property as a result of the Compressor Station. The language of the leases simply does not support this result.

In sum, Chevron's reading of the Surface Leases contradicts the clear terms of the Mineral Leases as well as the damages provisions in the Surface Leases. As such, the court DENIES Chevron's Motion for Partial Summary Judgment on All Claims Related to the Removal, Restoration, or Decommissioning of Equipment and Related Facilities Under the 1990 Surface Lease [ECF No. 164].[40]

### D. Chevron's Motion for Summary Judgment on Prescription of Surface Leases.

Next, Chevron argues that any of Emerald Land's claims that are based on the Surface Leases as well as the Produced Water Disposal Agreement are subject to prescription. Chevron argues that any causes of action arising out of these contracts prescribed ten years after the terms of the contracts ended.

In diversity actions, state law governs questions regarding prescriptive periods, so Louisiana law applies here.[41] Contract claims are subject to a liberative prescriptive period of ten years.[42] The ten-year prescriptive period begins to run on the date the contract is allegedly breached or when the cause of action arises.[43] Under Louisiana law, contract claims are subject to the doctrine of *contra non valentem,* which suspends the running of prescription during the period in which a cause of action is not known or is not reasonably knowable.[44] As such, Chevron's

---

[40] Based on the Court's ruling, it is unnecessary to address Emerald Land's additional arguments that (1) there is a dispute with regard to whether the entirety of the Compressor Station is contained within the .83 acres; and (2) there is a dispute that Chevron's assignees and successors in interested continued to use the Compressor Station.
[41] *See Calhoun v. Ford,* 625 F.2d 576, 577 (5th Cir. 1980).
[42] La. Civil Code Art. 3499.
[43] *See Ohle v. Uhalt,* 2016-0569 (La. App. 4 Cir. 2/1/17), 213 So. 3d 1, 10.
[44] *See Landry v. Blaise,* 2002-0822 (La. App. 4 Cir. 10/23/02), 829 So. 2d 661, 665.

argument that any causes of action prescribed on their face ten years from the end of the term of the leases is incorrect.

Rather, prescription would not begin to run until Emerald Land had knowledge of the breach of contract. However, actual knowledge of damage is not required for prescription to commence. Instead, prescription is triggered by constructive knowledge—that is, when the plaintiff "should have" known of the damage. Knowledge sufficient to start the running of prescription has been defined as "whatever notice is enough to excite attention and put the injured party on guard or call for inquiry."[45] "Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry might lead."[46] In other words, "a plaintiff will be deemed to know what he could by reasonable diligence have learned."[47] In the context of oilfield contamination litigation, the Louisiana Supreme Court noted that "[i]n a case involving constructive knowledge, the time when prescription begins to run depends on the reasonableness of a plaintiff's action or inaction."[48]

Chevron argues that Emerald Land had constructive knowledge of the causes of action by August 17, 2007 at the latest based on a letter sent from Darden on behalf of Emerald Land to Chevron and other successors in interest.[49] The letter is dated exactly ten years and one day prior to the date that Emerald Land filed the Amended Complaint; that complaint asserted claims against Chevron for the first time. Chevron argues that the letter from Darden alleges the same damage to the Property that is the subject of the current lawsuit. The Court disagrees. Darden's August 2007 letter does not claim any damage to the Property but rather seeks information regarding the use of

---

[45] *Hogg v. Chevron U.S.A., Inc.*, 2009-2632 (La. 7/6/10), 45 So. 3d 991, 997.
[46] *Id.*
[47] *Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/10), 48 So. 3d 234, 246.
[48] *Hogg,* at 1001.
[49] ECF Doc. 168-3 at 15-20.

13

the Property and inquires whether any wells or equipment are active or should be plugged; it also requested information as to the lessees' ability to plug the wells and remove equipment once any wells were no longer active. At no point does Darden indicate that Emerald Land was aware of any damage to the Property. Accordingly, Chevron's argument that the August 17, 2007 letter commenced the running of the ten-year prescriptive period is incorrect. The Court therefore DENIES Chevron's Motion for Summary Judgment on Prescription of Surface Leases [ECF No. 168].

### E. Chevron's Motion for Summary Judgment on Prescription of Tort Claims.

Finally, Chevron argues that any tort claims asserted by Emerald Land are prescribed based on (1) the same August 17, 2007 letter from Mr. Darden; (2) minutes from Emerald Land board meetings; and (3) an email chain from 2008-2009. Emerald Land has subsequently filed a motion to dismiss all of its tort claims. Chevron's Motion for Summary Judgment on Prescription of Tort Claims [ECF No. 166] is therefore DENIED AS MOOT.

## III.
### CONCLUSION

Based upon the foregoing reasons, Chevron's (1) Motion for Partial Summary Judgment on All Claims Related to the Removal, Restoration, or Decommissioning of Equipment and Related Facilities Under the 1990 Surface Lease [ECF No. 164]; (2) Motion for Summary Judgment on Prescription of Tort Claims [ECF No. 166]; (3) Motion for Summary Judgment on Prescription of Surface Leases [ECF No. 168]; and (4) Motion to Strike Declaration of Rudy Sparks and Declaration of M. Taylor Darden [ECF No. 216] are each DENIED.

THUS DONE in Chambers on this 13th day of July, 2021.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE